# Exhibit B

 **Your Missouri Courts**                    Search for Cases by: Select Search Method...   ▼    .net

Judicial Links  |  eFiling  |  Help  |  Contact Us  |  Print       GrantedPublicAccess  Logoff JEFFREY_RUSSELL

1622-CC09982 - WANDA REDDICK ET AL V GYNECARE, INC ET AL (E-CASE)

| Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution |

This information is provided as a service and is not considered an official court record.

**Click here to eFile on Case**        Sort Date Entries: ● Descending   Display Options:
**Click here to Respond to Selected Documents**                    ○ Ascending        All Entries   ▼

---

**08/29/2016**   **Jury Trial Scheduled**
              **Scheduled For:** 07/17/2017; 9:00 AM ; BRYAN L HETTENBACH; City of St. Louis

**08/15/2016**   **Notice/Acknowledgement Issued**
              Document ID: 16-NASM-168, for JOHNSON & JOHNSON.

              **Notice/Acknowledgement Issued**
              Document ID: 16-NASM-167, for ETHICON INC.

              **Notice/Acknowledgement Issued**
              Document ID: 16-NASM-166, for GYNECARE, INC.

              **Summons Issued-Reg/Cert Mail**
              Document ID: 16-SMCM-166, for JOHNSON & JOHNSON.

              **Summons Issued-Reg/Cert Mail**
              Document ID: 16-SMCM-165, for ETHICON INC.

              **Summons Issued-Reg/Cert Mail**
              Document ID: 16-SMCM-164, for GYNECARE, INC.

**08/11/2016**   **Filing Info Sheet eFiling**
              **Filed By:** SEAN PATRICK BARTH

              **Memorandum Filed**
              Memorandum.
              **Filed By:** SEAN PATRICK BARTH
              **On Behalf Of:** WANDA REDDICK, SUSAN HEWITT, NEREIDA HERNANDEZ, JEANETTE
              MONTIJO, PATRICIA GUERRERO, PAMELA BOUTWELL, DORA COOK, KAREN BOOTH, MAE
              HARKEY, KRISTEN MORRISON, RUTH EGGERT, LAURA CUTRIGHT, MARILYN DUVERGER,
              MARY MCCLARY, DEE ORGAN, PHYLLIS SMILEY, ROSA BACON, JUDY BAYNE, KATHERINE
              ANDERSON, CYNTHIA BURNETT, FRANCHESCA CARRASCO, PATRICIA DICKERSON, KATHY
              THOMAS, SUSAN ZYLA, WANDA PERRY, JANYCE RODGERS, SUZANNE SMITH, JUDY TYSON,
              SUSAN HEATH-COX, MATTIE BROWN, LINDA FUCHS, KIMBERLY KUEBLER, KRISTI COOPER,
              VICKI WEYMOUTH, BARBARA BURKETT, CLAUDIA MYERS, PEGGY HIGGINBOTHAM, ROBERTA
              HUTCHERSON, VICKI WILLIAMS, ALVINA MOSLEY, ROSA THRELFALL, NINA TRIMM, CYNTHIA
              RUELLE, LOIS DESPRES, ALBERTA ROWE, MARGARET WOLF, AGNES SANCHEZ, SONYA
              LENTZ, ELIZABETH HUMES, CLAUDIA CRUTCHER, DANA BAILEY, JOANN VEST, CAROLYN
              TURNER, DONNA CARPENTER, HEATHER HIATT, BARBARA FARINA, LAUREN ROSE, PATRICIA
              FAY ROBINETTE, ALICE MADDEN, ELLEN BROWN, VONNA BRANDSTATTER, KATHLEEN
              AGUINAGE, KRISTA BRITTIN, GENA SNOW, DEBRA RIEGERT, GYNECARE, INC, ETHICON INC,
              JOHNSON & JOHNSON

              **Pet Filed in Circuit Ct**
              Petition.
              **Filed By:** SEAN PATRICK BARTH

☐ **Judge Assigned**

# IN THE CIRCUIT COURT
## STATE OF MISSOURI
## TWENTY-SECOND JUDICIAL CIRCUIT
### (City of St. Louis)

|  |  |
|---|---|
| WANDA REDDICK; SUSAN HEWITT; NEREIDA HERNANDEZ; JEANETTE MONTIJO; PATRICIA GUERRERO; PAMELA BOUTWELL; DORA COOK; KAREN BOOTH; MAE HARKEY; KRISTEN MORRISON; RUTH EGGERT; LAURA CUTRIGHT; MARILYN DUVERGER; MARY MCCLARY; DEE ORGAN; PHYLLIS SMILEY; ROSA BACON; JUDY BAYNE; KATHERINE ANDERSON; CYNTHIA BURNETT; FRANCHESCA CARRASCO; PATRICIA DICKERSON; KATHY THOMAS; SUSAN ZYLA; WANDA PERRY; JANYCE RODGERS; SUZANNE SMITH; JUDY TYSON; SUSAN HEATH-COX; MATTIE BROWN; LINDA FUCHS; KIMBERLY KUEBLER; KRISTI COOPER; VICKI WEYMOUTH; BARBARA BURKETT; CLAUDIA MYERS; PEGGY HIGGINBOTHAM; ROBERTA HUTCHERSON; VICKI WILLIAMS; ALVINA MOSLEY; ROSA THRELFALL; NINA TRIMM; CYNTHIA RUELLE; LOIS DESPRES; ALBERTA ROWE; MARGARET WOLF; AGNES SANCHEZ; SONYA LENTZ; ELIZABETH HUMES; CLAUDIA CRUTCHER; DANA BAILEY; JOANN VEST; CAROLYN TURNER; DONNA CARPENTER; HEATHER HIATT; BARBARA FARINA; LAUREN ROSE; PATRICIA FAY ROBINETTE; ALICE MADDEN; ELLEN BROWN; VONNA BRANDSTATTER; KATHLEEN AGUINAGE; KRISTA BRITTIN; GENA SNOW; DEBRA RIEGERT | Case Number<br>Division<br><br>**JURY TRIAL DEMANDED** |
| Plaintiffs, |  |
| v. |  |

GYNECARE, INC; ETHICON, INC.,
JOHNSON & JOHNSON, AND DOE
MANUFACTURERS ONE THROUGH ONE
HUNDRED;

          Defendants.

## PETITION

COME NOW Plaintiffs, WANDA REDDICK; SUSAN HEWITT; NEREIDA HERNANDEZ; JEANETTE MONTIJO; PATRICIA GUERRERO; PAMELA BOUTWELL; DORA COOK; KAREN BOOTH; MAE HARKEY; KRISTEN MORRISON; RUTH EGGERT; LAURA CUTRIGHT; MARILYN DUVERGER; MARY MCCLARY; DEE ORGAN; PHYLLIS SMILEY; ROSA BACON; JUDY BAYNE; KATHERINE ANDERSON; CYNTHIA BURNETT; FRANCHESCA CARRASCO; PATRICIA DICKERSON; KATHY THOMAS; SUSAN ZYLA; WANDA PERRY; JANYCE RODGERS; SUZANNE SMITH; JUDY TYSON; SUSAN HEATH-COX; MATTIE BROWN; LINDA FUCHS; KIMBERLY KUEBLER; KRISTI COOPER; VICKI WEYMOUTH; BARBARA BURKETT; CLAUDIA MYERS; PEGGY HIGGINBOTHAM; ROBERTA HUTCHERSON; VICKI WILLIAMS; ALVINA MOSLEY; ROSA THRELFALL; NINA TRIMM; CYNTHIA RUELLE; LOIS DESPRES; ALBERTA ROWE; MARGARET WOLF; AGNES SANCHEZ; SONYA LENTZ; ELIZABETH HUMES; CLAUDIA CRUTCHER; DANA BAILEY; JOANN VEST; CAROLYN TURNER; DONNA CARPENTER; HEATHER HIATT; BARBARA FARINA; LAUREN ROSE; PATRICIA FAY ROBINETTE; ALICE MADDEN; ELLEN BROWN; VONNA BRANDSTATTER; KATHLEEN AGUINAGE; KRISTA BRITTIN; GENA SNOW; DEBRA RIEGERT, by and through their undersigned counsel, and for the cause of action against GYNECARE, INC; ETHICON, INC., JOHNSON & JOHNSON, AND DOE MANUFACTURERS ONE THROUGH ONE HUNDRED; alleging the following upon information and belief (including investigation made by and through Plaintiffs' counsel), except those allegations that pertain to Plaintiffs, which are based on personal knowledge:

## PARTIES

1.    Plaintiff WANDA REDDICK is a natural person residing in the State of Missouri. Plaintiff WANDA REDDICK was implanted with a Gynecare TVT Secur device during surgery performed on or around June 9, 2010. The Gynecare TVT Secur device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J, and DOES 1 through 100, and each of them. After the Gynecare TVT Secur device was implanted, Plaintiff WANDA REDDICK began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and

believe may have underwent multiple corrective surgeries to remove or part of the pelvic mesh device.

2.      Plaintiff SUSAN HEWITT is a natural person residing in the State of Missouri. Plaintiff SUSAN HEWITT was implanted with a Gynecare Prolift + M device during surgery performed on or around April 5, 2010. The Gynecare Proift + M device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J, and DOES 1 through 100, and each of them. After the Gynecare Prolift + M was implanted,  Plaintiff SUSAN HEWITT began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and believe may have underwent multiple corrective surgeries to remove or part of the pelvic mesh device.

3.      Plaintiff NEREIDA HERNANDEZ is a natural person residing in the State of New Jersey. Plaintiff NEREIDA HERNANDEZ was implanted with a Gynecare TVT device during surgery performed on or around November 30, 2004.  The Gynecare TVT device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J, and DOES 1 through 100, and each of them. After the Gynecare TVT device was implanted,  Plaintiff NEREIDA HERNANDEZ began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and believe may have underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device on June  30, 2014.

4.      Plaintiff JEANETTE MONTIJO is a natural person residing in the State of New Jersey. Plaintiff JEANETTE MONTIJO was implanted with a Gynecare TVT device during surgery performed on or around August 28, 2009.  The Gynecare TVT device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J, and DOES 1 through 100, and each of them. After the Gynecare TVT device was implanted,  Plaintiff JEANETTE MONTIJO  began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and

believe may have underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device on July 21, 2014.

5.      Plaintiff PATRICIA GUERRERO is a natural person residing in the State of California. Plaintiff PATRICIA GUERRERO was implanted with a In-Fast Ultra Transvaginal Sling device during surgery performed on or around February 6, 2004.  The In-Fast Transvaginal Sling device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J, and DOES 1 through 100, and each of them. After the In-Fast Transvaginal Sling device was implanted,  Plaintiff PATRICIA GUERRERO began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and believe may have underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device on January 1, 2006.

6.      Plaintiff PAMELA BOUTWELL  is a natural person residing in the State of Alabama. Plaintiff PAMELA BOUTWELL was implanted with a Gynecare TVT Secur device during surgery performed on or around March 16, 2005.  The Gynecare TVT Secur device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J, and DOES 1 through 100, and each of them. After the Gynecare TVT  Secur device was implanted, Plaintiff PAMELA BOUTWELL began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and believe may have underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

7.      Plaintiff DORA COOK is a natural person residing in the State of Alabama. Plaintiff DORA COOK was implanted with a Gynecare TVT Secur device during surgery performed on or around January 30, 2007.  The Gynecare TVT Secur device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J, and DOES 1 through 100, and each of them. After the Gynecare TVT Secur device was implanted,  Plaintiff DORA COOK began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and believe may

have underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

8.      Plaintiff KAREN BOOTH is a natural person residing in the State of Arkansas. Plaintiff KAREN BOOTH was implanted with a Gynecare TVT Retropubic System device during surgery performed on or around February 12, 2003. The Gynecare TVT Retropubic System device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J, and DOES 1 through 100, and each of them. After the Gynecare TVT Retropubic System device was implanted, Plaintiff KAREN BOOTH began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and believe may have underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device on August 8, 2010.

9.      Plaintiff MAE HARKEY is a natural person residing in the State of Arkansas. Plaintiff MAE HARKEY was implanted with a Gynecare Prolift device during surgery performed on or around December 11, 2007. The Gynecare TVT Prolift device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J, and DOES 1 through 100, and each of them. After the Gynecare TVT Prolift device was implanted, Plaintiff MAE HARKEY began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and believe may have underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

10.     Plaintiff KRISTEN MORRISON is a natural person residing in the State of Arizona. Plaintiff KRISTIN MORRISON was implanted with a Gynecare Prolift device during surgery performed on or around January 29, 2008. The Gynecare TVT Prolift device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J, and DOES 1 through 100, and each of them. After the Gynecare TVT Prolift device was implanted, Plaintiff KRISTEN MORRISON began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and believe may have underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

11.    Plaintiff RUTH EGGERT is a natural person residing in the State of Colorado. Plaintiff RUTH EGGERT was implanted with a Gynecare Prolift device during surgery performed on or around August 7, 2007. The Gynecare TVT Prolift device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J, and DOES 1 through 100, and each of them. After the Gynecare TVT Prolift device was implanted, Plaintiff RUTH EGGERT began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and believe may have underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

12.    Plaintiff LAURA CUTRIGHT is a natural person residing in the State of Colorado. Plaintiff LAURA CUTRIGHT was implanted with a Gynecare Prolift device during surgery performed on or around July 28, 2008. The Gynecare TVT Prolift device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J, and DOES 1 through 100, and each of them. After the Gynecare TVT Prolift device was implanted, Plaintiff LAURA CUTRIGHT began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and believe may have underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

13.    Plaintiff MARILYN DUVERGER is a natural person residing in the State of Connecticut. Plaintiff MARILYN DUVERGER was implanted with a Gynecare Gynemesh PS device during surgery performed on or around November 15, 2005. The Gynecare Gynemesh PS device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J, and DOES 1 through 100, and each of them. After the Gynecare Gynemesh PS device was implanted, Plaintiff MARILYN DUVERGER began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and believe may have underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

14.    Plaintiff MARY MCCLARY is a natural person residing in the State of Florida.

Plaintiff MARY MCCLARY was implanted with a Gynecare Prolift device during surgery performed on or around October 7, 2008. The Gynecare Prolift device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J, and DOES 1 through 100, and each of them. After the Gynecare Prolift device was implanted, Plaintiff MARY MCCLARY began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and believe may have underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device on January 13, 2009.

15.    Plaintiff DEE ORGAN is a natural person residing in the State of Florida. Plaintiff DEE ORGAN was implanted with a Gynecare Gynemesh PS device during surgery performed on or around June 28, 2010.  The Gynecare Gynemesh PS device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J, and DOES 1 through 100, and each of them. After the Gynecare Gynemesh PS device was implanted, Plaintiff DEE ORGAN began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and believe may have underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device on November 10, 2010.

16.    Plaintiff PHYLLIS SMILEY is a natural person residing in the State of Florida. Plaintiff PHYLLIS SMILEY was implanted with a Gynecare Prolift device during surgery performed on or around December 10, 2010.  The Gynecare Prolift device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J, and DOES 1 through 100, and each of them. After the Gynecare Gynemesh PS device was implanted, Plaintiff PHYLLIS SMILEYbegan to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and believe may have underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device on September 23, 2011.

17.    Plaintiff ROSA BACON is a natural person residing in the State of Florida. Plaintiff ROSA BACON was implanted with a Gynecare TVT device during surgery performed on or around

August 27, 2007. The Gynecare TVT device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J, and DOES 1 through 100, and each of them. After the Gynecare TVT device was implanted, Plaintiff ROSA BACON began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and believe may have underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device on July 6, 2010.

18.     Plaintiff JUDY BAYNE is a natural person residing in the State of Florida. Plaintiff JUDY BAYNE was implanted with a Gynecare Gynemesh PS device during surgery performed on or around December 21, 2004. The Gynecare Gynemesh PS device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J, and DOES 1 through 100, and each of them. After the Gynecare Gynemesh PS device was implanted, Plaintiff JUDY BAYNE began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and believe may have underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device on September 1, 2005.

19.     Plaintiff KATHERINE ANDERSON is a natural person residing in the State of Florida. Plaintiff KATHERINE ANDERSON was implanted with a Gynecare TVT Secur device during surgery performed on or around December 18, 2007. The Gynecare TVT Secur device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J, and DOES 1 through 100, and each of them. After the Gynecare TVT Secur device was implanted, Plaintiff KATHERINE ANDERSON began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and believe may have underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

20.     Plaintiff CYNTHIA BURNETT is a natural person residing in the State of Florida. Plaintiff CYNTHIA BURNETT was implanted with a Gynecare TVT device during surgery performed on or around January 6, 2010 The Gynecare TVT device was manufactured, marketed,

advertised and promoted by Defendant Ethicon/Gynecare/J&J, and DOES 1 through 100, and each of them. After the Gynecare TVT device was implanted, Plaintiff CYNTHIA BURNETT began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and believe may have underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device on October 17, 2015.

21.     Plaintiff FRANCHESCA CARRASCO is a natural person residing in the State of Florida. Plaintiff FRANCHESCA CARRASCO was implanted with a Gynecare Prolift device during surgery performed on or around July 1, 2009 The Gynecare Prolift device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J, and DOES 1 through 100, and each of them. After the Gynecare Prolift device was implanted, Plaintiff FRANCHESCA CARRASCO began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and believe may have underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

22.     Plaintiff PATRICIA DICKERSON is a natural person residing in the State of Florida. Plaintiff PATRICIA DICKERSON was implanted with a Gynecare TVT Exact device during surgery performed on or around October 28, 2011.   The Gynecare TVT Exact device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J, and DOES 1 through 100, and each of them. After the Gynecare TVT Exact device was implanted, Plaintiff PATRICIA DICKERSON began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and believe may have underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

23.     Plaintiff KATHY THOMAS is a natural person residing in the State of Florida. Plaintiff KATHY THOMAS was implanted with a Gynecare Prolift + M device during surgery performed on or around August 5, 2009.   The Gynecare Prol;ift + M device was manufactured,

marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J, and DOES 1 through 100, and each of them. After the Gynecare Prolift + M device was implanted, Plaintiff KATHY THOMAS began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and believe may have underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

24.     Plaintiff SUSAN ZYLA is a natural person residing in the State of Florida. Plaintiff SUSAN ZYLA was implanted with a Gynecare Prolift device during surgery performed on or around April 24, 2009. The Gynecare Prolift device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J, and DOES 1 through 100, and each of them. After the Gynecare Prolift device was implanted, Plaintiff SUSAN ZYLA began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and believe may have underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

25.     Plaintiff WANDA PERRY is a natural person residing in the State of Georgia. Plaintiff WANDA PERRY was implanted with a Gynecare TVT Secur device during surgery performed on or around December 13, 2007. The Gynecare TVT Secur device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J, and DOES 1 through 100, and each of them. After the Gynecare TVT Secur device was implanted, Plaintiff WANDA PERRY began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and believe may have underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

26.     Plaintiff JANYCE RODGERS is a natural person residing in the State of Georgia. Plaintiff JANYCE RODGERS was implanted with a Gynecare Prolift device during surgery performed on or around August 15, 2005. The Gynecare Prolift device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J, and DOES 1 through 100, and each of them. After the Gynecare TVT Secur device was implanted, Plaintiff JANYCE

RODGERS began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and believe may have underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

27.     Plaintiff SUZANNE SMITH is a natural person residing in the State of Georgia. Plaintiff SUZANNE SMITH was implanted with a Gynecare Prolift device during surgery performed on or around November 7, 2007.  The Gynecare Prolift device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J, and DOES 1 through 100, and each of them. After the Gynecare TVT Secur device was implanted,  Plaintiff SUZANNE SMITH began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and believe may have underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

28.     Plaintiff JUDY TYSON is a natural person residing in the State of Georgia. Plaintiff JUDY TYSON was implanted with a Gynecare Gynemesh PS device during surgery performed on or around September 27, 2006.  The Gynecare Gynemesh PS device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J, and DOES 1 through 100, and each of them. After the Gynecare Gynemesh PS device was implanted,  Plaintiff JUDY TYSON began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and believe may have underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

29.     Plaintiff SUSAN HEATH-COX is a natural person residing in the State of Georgia. Plaintiff SUSAN HEATH-COX was implanted with a Gynecare TVT Oburator device during surgery performed on or around April 3, 2009.  The Gynecare TVT Oburator device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J, and DOES 1 through 100, and each of them. After the Gynecare TVT Oburator device was implanted,  Plaintiff SUSAN HEATH-COX began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information

and believe may have underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device on October 2, 2015.

30. Plaintiff MATTIE BROWN is a natural person residing in the State of Georgia. Plaintiff MATTIE BROWN was implanted with a Gynecare TVT device during surgery performed on or around January 3, 2007. The Gynecare TVT device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J, and DOES 1 through 100, and each of them. After the Gynecare TVT device was implanted, Plaintiff MATTIE BROWN began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and believe may have underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

31. Plaintiff LINDA FUCHS is a natural person residing in the State of Georgia. Plaintiff LINDA FUCHS was implanted with a Gynecare Prolift device during surgery performed on or around April 24, 2007. The Gynecare Prolift device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J, and DOES 1 through 100, and each of them. After the Gynecare Prolift device was implanted, Plaintiff LINDA FUCHS began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and believe may have underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

32. Plaintiff KIMBERLY KUEBLER is a natural person residing in the State of Georgia. Plaintiff KIMBERLY KUEBLER was implanted with a Gynecare Gynemesh PS device during surgery performed on or around May 23, 2011. The Gynecare Gynemesh PS device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J, and DOES 1 through 100, and each of them. After the Gynecare Gynemesh PS device was implanted, Plaintiff KIMBERLY KUEBLER began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and believe may have underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

33.     Plaintiff KRISTI COOPER is a natural person residing in the State of Iowa. Plaintiff KRISTI COOPER was implanted with a Gynecare Prosima device during surgery performed on or around December 30, 2010. The Gynecare Prosima device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J, and DOES 1 through 100, and each of them. After the Gynecare Prosima device was implanted, Plaintiff KRISTI COOPER began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and believe may have underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

34.     Plaintiff VICKI WEYMOUTH is a natural person residing in the State of Idaho. Plaintiff VICKI WEYMOUTH was implanted with a Gynecare Prolift device during surgery performed on or around April 7, 2010. The Gynecare Prolift device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J, and DOES 1 through 100, and each of them. After the Gynecare Prolift device was implanted, Plaintiff VICKI WEYMOUTH began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and believe may have underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

35.     Plaintiff BARBARA BURKETT is a natural person residing in the State of Idaho. Plaintiff BARBARA BURKETT was implanted with a Gynecare Prolift device during surgery performed on or around February 13, 2008.  The Gynecare Prolift device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J, and DOES 1 through 100, and each of them. After the Gynecare Prolift device was implanted, Plaintiff BARBARA BURKETT  began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and believe may have underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

36.     Plaintiff CLAUDIA MYERS is a natural person residing in the State of Illinois. Plaintiff CLAUDIA MYERS was implanted with a Gynecare Prolift device during surgery

performed on or around May 5, 2008. The Gynecare Prolift device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J, and DOES 1 through 100, and each of them. After the Gynecare Prolift device was implanted, Plaintiff CLAUDIA MYERS began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and believe may have underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

37.     Plaintiff PEGGY HIGGINBOTHAM is a natural person residing in the State of Mississippi. Plaintiff PEGGY HIGGINBOTHAM was implanted with a Gynecare TVT-SECURE device during surgery performed on or around March 23, 2009. The Gyencare TVT- Secure device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J., and DOES 1 through 100, and each of them. After the Gynecare TVT- Secure was implanted Plaintiff PEGGY HIGGINBOTHAM began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and belief, underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

38.     Plaintiff ROBERTA HUTCHERSON is a natural person residing in the State of Mississippi. Plaintiff ROBERTA HUTCHERSON was implanted with a Gynecare TVT device during surgery performed on or around December 26, 2013. The Gyencare TVT device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J., and DOES 1 through 100, and each of them. After the Gynecare TVT was implanted Plaintiff POBERTA HUTCHERSON began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and belief, underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

39.     Plaintiff VICKI WILLIAMS is a natural person residing in the State of Mississippi. Plaintiff VICKI WILLIAMS was implanted with a Gynecare Gynemesh PS device during surgery performed on or around July 26, 2011. The Gyencare Gynemesh PS device was manufactured,

marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J., and DOES 1 through 100, and each of them. After the Gynecare Gynemesh PS was implanted Plaintiff VICKI WILLIAMS began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and belief, underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

40.     Plaintiff ALVINA MOSLEY is a natural person residing in the State of Mississippi. Plaintiff ALVINA MOSLEY was implanted with a Gynecare TVT- Secure device during surgery performed on or around November 9, 2007. The Gynecare TVT- Secure device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J., and DOES 1 through 100, and each of them. After the Gynecare TVT- Secure was implanted Plaintiff ALVINA MOSLEY began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and belief, underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

41.     Plaintiff ROSA THRELFALL is a natural person residing in the State of Michigan. Plaintiff ROSA THRELFALL was implanted with a Gynecare Prolift + M device during surgery performed on or around October 24, 2007. The Gynecare Prolift + M device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J., and DOES 1 through 100, and each of them. After the Gynecare Prolift + M was implanted Plaintiff ROSA THRELFALL began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and belief, underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

42.     Plaintiff NINA TRIMM is a natural person residing in the State of Michigan. Plaintiff NINA TRIMM was implanted with a Gyencare Gynemesh PS device during surgery performed on or around August 27, 2009. The Gyencare Gynemesh PS device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J., and DOES 1 through 100, and each of them. After the Gyencare Gynemesh PS was implanted Plaintiff NINA TRIMM began to experience severe complications related to the implant, including but not limited to extreme pain,

discomfort, urinary problems, dyspareunia and upon information and belief, underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

43.     Plaintiff CYNTHIA RUELLE is a natural person residing in the State of Michigan. Plaintiff CYNTHIA RUELLE was implanted with a Gynecare Prolift device during surgery performed on or around June 29, 2011. The Gynecare Prolift device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J., and DOES 1 through 100, and each of them. After the Gynecare Prolift was implanted Plaintiff CYNTHIA RUELLE began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and belief, underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

44.     Plaintiff LOIS DESPRES is a natural person residing in the State of Maine. Plaintiff LOIS DESPRES was implanted with a Gynecare TVT- Secure device during surgery performed on or around September 30, 2009. The Gynecare TVT- Secure device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J., and DOES 1 through 100, and each of them. After the Gynecare TVT- Secure was implanted Plaintiff LOIS DESPRES began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and belief, underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

45.     Plaintiff ALBERTA ROWE is a natural person residing in the State of Maine. Plaintiff ALBERTA ROWE was implanted with a Gynecare TVT device during surgery performed on or around December 14, 2010. The Gynecare TVT device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J., and DOES 1 through 100, and each of them. After the Gynecare TVT was implanted Plaintiff ALBERTA ROWE began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and belief, on April 20, 2015 underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

46.     Plaintiff MARGARET WOLF is a natural person residing in the State of Maryland.

Plaintiff MARGARET WOLF was implanted with a Gynecare Prosima device during surgery performed on or around April 20, 2007. The Gynecare Prosima device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J., and DOES 1 through 100, and each of them. After the Gynecare Prosima was implanted Plaintiff MARGARET WOLF began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and belief, on May 11, 2007 underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

47.    Plaintiff AGNES SANCHEZ is a natural person residing in the State of Louisiana. Plaintiff AGNES SANCHEZ was implanted with a Gyencare Gynemesh PS device during surgery performed on or around January 22, 2008. The Gyencare Gynemesh PS device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J., and DOES 1 through 100, and each of them. After the Gyencare Gynemesh PS was implanted Plaintiff AGNES SANCHEZ began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and belief, on April 22, 2008 underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

48.    Plaintiff SONYA LENTZ is a natural person residing in the State of Kentucky. Plaintiff SONYA LENTZ was implanted with a Gyencare Gynemesh PS device during surgery performed on or around October 16, 2008. The Gyencare Gynemesh PS device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J., and DOES 1 through 100, and each of them. After the Gyencare Gynemesh PS was implanted Plaintiff ALBERTA ROWE began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and belief, underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

49.    Plaintiff ELIZABETH HUMES is a natural person residing in the State of Kentucky. Plaintiff ELIZABETH HUMES was implanted with a Gynecare TVT- Secure device during surgery performed on or around November 6, 2009. The Gynecare TVT- Secure device was manufactured,

marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J., and DOES 1 through 100, and each of them. After the Gynecare TVT- Secure was implanted Plaintiff ELIZABETH HUMES began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and belief, underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

50.     Plaintiff CLAUDIA CRUTCHER is a natural person residing in the State of Kentucky. Plaintiff CLAUDIA CRUTCHER was implanted with a Gynecare Prolift device during surgery performed on or around October 28, 2008. The Gynecare Prolift e device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J., and DOES 1 through 100, and each of them. After the Gynecare Prolift was implanted Plaintiff CLAUDIA CRUTCHER began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and belief, underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

51.     Plaintiff DANA BAILEY is a natural person residing in the State of Kentucky. Plaintiff DANA BAILEY was implanted with a Gynecare TVT device during surgery performed on or around December 5, 2011. The Gynecare TVT device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J., and DOES 1 through 100, and each of them. After the Gynecare TVT was implanted Plaintiff DANA BAILEY began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and belief, underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

52.     Plaintiff JOANN VEST is a natural person residing in the State of Kentucky. Plaintiff JOANN VEST was implanted with a Gynecare Prolift device during surgery performed on or around December 11, 2008. The Gynecare Prolift device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J., and DOES 1 through 100, and each of them. After the Gynecare Prolift was implanted Plaintiff JOANN VEST began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary

problems, dyspareunia and upon information and belief, underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

53.     Plaintiff CAROLYN TURNER is a natural person residing in the State of Kentucky. Plaintiff CAROLYN TURNER was implanted with a Gynecare TVT- Secure device during surgery performed on or around September 14, 2009. The Gynecare TVT- Secure device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J., and DOES 1 through 100, and each of them. After the Gynecare TVT- Secure was implanted Plaintiff CAROLYN TURNER began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and belief, underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

54.     Plaintiff DONNA CARPENTER is a natural person residing in the State of Kansas. Plaintiff DONNA CARPENTER was implanted with a Gynecare Prolift device during surgery performed on or around September 14, 2009. The Gynecare Prolift device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J., and DOES 1 through 100, and each of them. After the Gynecare Prolift was implanted Plaintiff DONNA CARPENTER began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and belief, underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

55.     Plaintiff HEATHER HIATT is a natural person residing in the State of Indiana. Plaintiff HEATHER HIATT was implanted with a Gynecare TVT- Secure device during surgery performed on or around April 17, 2012. The Gynecare TVT- Secure device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J., and DOES 1 through 100, and each of them. After the Gynecare TVT- Secure was implanted Plaintiff HEATHER HIATT began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and belief, underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

56.     Plaintiff BARBARA FARINA is a natural person residing in the State of State of

Indiana. Plaintiff BARBARA FARINA was implanted with a Gynecare TVT- Secure device during surgery performed on or around March 9, 2009. The Gynecare TVT- Secure device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J., and DOES 1 through 100, and each of them. After the Gynecare TVT- Secure was implanted Plaintiff BARBARA FARINA began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and belief, underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

57.     Plaintiff LAUREN ROSE is a natural person residing in the State of State of Indiana. Plaintiff LAUREN ROSE was implanted with a Gynecare TVT- Secure device during surgery performed on or around December 18, 2007. The Gynecare TVT- Secure device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J., and DOES 1 through 100, and each of them. After the Gynecare TVT- Secure was implanted Plaintiff LAUREN ROSE began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and belief, underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

58.     Plaintiff PATRICIA FAY ROBINETTE is a natural person residing in the State of State of Indiana. Plaintiff PATRICIA FAY ROBINETTE was implanted with a Gynecare TVT device during surgery performed on or around July 6, 2010. The Gynecare TVT device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J., and DOES 1 through 100, and each of them. After the Gynecare TVT was implanted Plaintiff PATRICIA FAY ROBINETTE began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and belief, underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

59.     Plaintiff ALICE MADDEN is a natural person residing in the State of State of Indiana. Plaintiff ALICE MADDEN was implanted with a Gynecare TVT- Secure device during

surgery performed on or around May 30, 2008. The Gynecare TVT- Secure device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J., and DOES 1 through 100, and each of them. After the Gynecare TVT- Secure was implanted Plaintiff ALICE MADDEN began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and belief, underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

60. Plaintiff ELLEN BROWN is a natural person residing in the State of State of Illinois. Plaintiff ELLEN BROWN was implanted with a Gynecare TVT device during surgery performed on or around August 11, 2011. The Gynecare TVT device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J., and DOES 1 through 100, and each of them. After the Gynecare TVT was implanted Plaintiff ELLEN BROWN began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and belief, underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

61. Plaintiff VONNA BRANDSTATTER is a natural person residing in the State of State of Illinois. Plaintiff VONNA BRANDSTATTER was implanted with a Gyencare Gynemesh PS device during surgery performed on or around January 27, 2010. The Gyencare Gynemesh PS device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J., and DOES 1 through 100, and each of them. After the Gyencare Gynemesh PS was implanted Plaintiff VONNA BRANDSTATTER began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and belief, underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

62. Plaintiff KATHLEEN AGUINAGE is a natural person residing in the State of State of Illinois. Plaintiff KATHLEEN AGUINAGE was implanted with a Gyencare Prolift device during surgery performed on or around July 16, 2007. The Gyencare Prolift device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J., and DOES 1 through

100, and each of them. After the Gyencare Prolift was implanted Plaintiff KATHLEEN AGUINAGE began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and belief, underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

63.     Plaintiff KRISTA BRITTIN is a natural person residing in the State of State of Illinois. Plaintiff KRISTA BRITTIN was implanted with a Gyencare Gynemesh PS device during surgery performed on or around April 12, 2007. The Gyencare Gynemesh PS device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J., and DOES 1 through 100, and each of them. After the Gyencare Gynemesh PS was implanted Plaintiff KRISTA BRITTIN began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and belief, underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device.

64.     Plaintiff GENA SNOW is a natural person residing in the State of State of Illinois. Plaintiff GENA SNOW was implanted with a Gyencare Gynemesh PS device during surgery performed on or around September 9, 2010. The Gyencare Gynemesh PS device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J., and DOES 1 through 100, and each of them. After the Gyencare Gynemesh PS was implanted Plaintiff GENA SNOW began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and upon information and belief, underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device on November 1, 2010.

65.     Plaintiff DEBRA RIEGERT is a natural person residing in the State of State of Illinois. Plaintiff DEBRA RIEGERT was implanted with a Gyencare TVT device during surgery performed on or around September 9, 2010. The Gyencare TVT device was manufactured, marketed, advertised and promoted by Defendant Ethicon/Gynecare/J&J., and DOES 1 through 100, and each of them. After the Gyencare TVT was implanted Plaintiff DEBRA RIEGERT began to experience severe complications related to the implant, including but not limited to extreme pain,

discomfort, urinary problems, dyspareunia and upon information and belief, underwent multiple corrective surgeries to remove or revise part of the pelvic mesh device on November 1, 2010.

66.     As used herein "Implant Plaintiffs" shall mean to refer to the plaintiffs identified herein as someone who was implanted with a Ethicon/Gynecare/J&J transvaginal mesh device.

## JURISDICTION AND VENUE

67.     Plaintiffs are informed and believe, and thereon allege that at all times herein mentioned each of the Defendants hereto are individuals, corporations, partnerships and/or unincorporated associations organized and existing under and by virtue of the laws of the State of Missouri , or the laws of some other state or foreign jurisdiction, and that said Defendants, and each of them, were and are authorized to do and are doing business in the State of Missouri, or the laws of some other state or foreign jurisdiction and that said Defendants have and do regularly conduct business in the State of Missouri.

68.     Venue is proper in this county because Plaintiff WANDA REDDICK and SUSAN HEWITT are residents of Missouri.

## DEFENDANTS

69.     Defendant, Johnson & Johnson ("J&J") is a corporation, and according to its website, the world's largest and most diverse medical device and Diagnostics Company, with its worldwide headquarters located at One Johnson & Johnson Plaza, New Brunswick, New Jersey. Johnson & Johnson organizes its subsidiary businesses into individual Business Units to Exhibit A 2 coordinate the development, manufacture, testing, marketing promotion, training, distribution and sale of its' pelvic floor repair products. Within J&J there are three sectors, medical devices and diagnostics, pharmaceutical, and consumer. Within the medical devices and diagnostic sector are "Business Units" including the "Ethicon Franchise." The Ethicon Franchise was charged by J&J with the design, development, promotion, marketing, testing, training, distribution and sale of the pelvic floor repair products at issue in this case. The Company Group Chairman and Worldwide Franchise Chairman for the Ethicon Franchise, Gary Pruden, is employed by J&J. The companies which

comprise the Ethicon Franchise are thus controlled by J&J and include, but are not limited to, Ethicon Inc., Ethicon LLC, Ethicon LTD.

70.     Defendant, Ethicon, Inc., is a wholly owned subsidiary of Defendant Johnson & Johnson located in Somerville, New Jersey.

71.     Defendant, Ethicon, LLC, is a wholly owned subsidiary of Johnson & Johnson Medical, Inc., located in San Lorenzo, Puerto Rico. Ethicon LLC was charged by J&J with the manufacture of Ethicon Inc.'s pelvic floor repair products.

72.     Defendants, JOHN DOES 1-20 (fictitious names), are entities and/or persons who are liable to Plaintiffs, but who have not yet been identified despite reasonable due diligence on the part of Plaintiffs.

73.     At all times relevant herein, Defendants were engaged in the business of placing medical devices into the stream of commerce by designing, manufacturing, testing, training, marketing, promoting, packaging, labeling, and/or selling such devices, including the Prolene Mesh/Prolene Soft Mesh, Gynemesh, Gynemesh PS, TVT, TVT-Obturator (TVT-O), TVT-SECUR (TVT-S), TVT Exact, TVT Abbrevo, Prolift, Prolift +M, Prosima and other pelvic mesh products unknown at the present (hereinafter collectively referred to as "Pelvic Mesh

74.     Defendant GYNECARE, INC., (hereinafter "Gynecare") is a corporation formed and existing under the laws of the State of California, with its principal place of business at 235 Constitution Drive, Menlo Park, California.

75.     At all times alleged herein, Gynecare included and includes any and all parents, subsidiaries, affiliates, divisions, franchise, partners, joint ventures, and organizational units of any kind, their predecessors, successors, and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

76.     In or around October 1997, Gynecare merged with Ethicon, Inc.

77.     At all times alleged herein, Gynecare conducted regular and sustained business in Missouri by selling and distributing its products in Missouri as described below.

78.     Defendant ETHICON, INC. (hereinafter "Ethicon"), at all times alleged herein, is and

was a corporation formed under the laws of the State of New Jersey, with its principal place of business at US Route 22 West, Sommervile, New Jersey 08876.

79.    At all times alleged herein, Ethicon includes and included any and all parents, subsidiaries, affiliates, divisions, franchise, partners, joint ventures, and organizational units of any kind, their predecessors, successors, and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

80.    At all times alleged herein, Ethicon conducted regular and sustained business in Missouri by selling and distributing its products in Missouri as described below.  By these same activities, Ethicon has sufficient contacts within the State of Missouri to subject it to the jurisdiction of this Court.

81.    Defendant Johnson & Johnson, Inc. (hereinafter J&J) at all times alleged herein, is and was a corporation formed under the laws of the State of New Jersey, with its principal place of business at One Johnson & Johnson Plaza, New Brunswick, New Jersey.

82.    At all times alleged herein, J&J includes and included any and all parents, subsidiaries, affiliates, divisions, franchise, partners, joint ventures, and organizational units of any kind, their predecessors, successors, and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

83.    At all times alleged herein, J&J conducted regular and sustained business in Missouri by selling and distributing its products in Missouri as described below.  By these same activities, Ethicon has sufficient contacts within the State of Misouri to subject it to the jurisdiction of this Court.

84.    The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of defendants named herein as DOES 1 through 100 are unknown to plaintiffs at this time, who therefore sue said defendants by such fictitious names.  When the true names and capacities of said defendants have been ascertained, plaintiffs will amend this Complaint accordingly.  Plaintiffs are informed and believe, and thereon allege, that each defendant designated as a DOE is responsible, negligently, intentionally, strictly liable or in some other actionable

manner, for the events and happenings as alleged herein and are corporations organized and existing under and by virtue of the laws of the State of Missouri, or the laws of some other state or foreign jurisdiction, and that said defendants and each of them were authorized to do and are regularly doing business in the State of Missouri.

85.    When referring collectively to all Defendants in this action, Plaintiffs will use the term "Defendants".

<p style="text-align:center">FACTUAL ALLEGATIONS</p>

86.    At all relevant times, Defendants were in the business of developing, supplying, designing, manufacturing, labeling, packaging, distributing, marketing, supplying, advertising, licensing, selling and otherwise engaging in all activities that are part and parcel of the sale and distribution of Pelvic Mesh Products.    Defendants' Pelvic Mesh Products were purposed to remediate pelvic organ prolapse and/or stress urinary incontinence by implantation of polypropylene mesh inside the pelvic region of a woman's body.

87.    The Pelvic Mesh Products contain a monofilament polypropylene mesh intended for the treatment of pelvic organ prolapse and/or stress urinary incontinence. Despite claims that this material is inert, the scientific evidence shows that this material is biologically incompatible with human tissue and promotes an immune response in a large subset of the population receiving Defendants' Products containing this material.  This immune response promotes degradation of the pelvic tissue and can contribute to the formation of severe adverse reactions to the mesh.

88.    Defendants marketed and sold their Pelvic Mesh Products to the medical community and to patients as safe, effective and reliable medical devices which are implanted via safe, effective and minimally invasive surgical techniques for the treatment of pelvic organ prolapse and stress urinary incontinence, and as safer and more effective when compared to other products and procedures.

89.    Defendants have marketed and sold their Products to the medical community and patients through carefully planned, multifaceted marketing campaigns and strategies.  These campaigns and strategies include, but are not limited to, direct to consumer advertising, aggressive

marketing to health care providers at medical conferences, hospitals, and private offices, and often include the provision of valuable consideration and benefits to health care providers. Defendants also utilized documents, brochures, websites and telephone information lines, offering exaggerated and misleading information as to the safety and utility of their Products.

90.     Defendants actively and intentionally misled and continue to mislead the public, including the medical community, health care providers, and patients, into believing their Products are safe and effective, leading to the prescription for, and implantation of, their Products in the Implant Plaintiffs and numerous other women.

91.     At all times relevant to this action, Defendants intentionally, recklessly and/or negligently concealed, suppressed, omitted, minimized, and misrepresented the risks, dangers, defects, and disadvantages of Defendants' Products and advertised, promoted, marketed, licensed, sold and/or distributed these Products as safe medical devices, when, in fact, Defendants knew that these Products were not safe for their intended purposes and that the Defendants' Products would cause, and did cause, serious medical problems, and in some patients, catastrophic and permanent injuries.

92.     Contrary to Defendants' representations and marketing to the medical community and to patients, Defendants' Products have high failure, injury, and complication rates, the products fail to perform as intended or expected, their use requires frequent and often debilitating re-operations, and they have caused severe and irreversible injuries, conditions, and damage to a significant number of women, including the Implant Plaintiffs.   The defects stem from any or all of the following:

        a.   the use of polypropylene material in the Mesh itself and the immune reaction that results, causing adverse reactions and injuries;

        b.   the design of the Pelvic Mesh Devices to be inserted transvaginally into an area of the body with high levels of bacteria, yeast, and fungus that adhere to mesh causing immune reactions and subsequent tissue breakdown and adverse reactions and injuries;

    c.  biomechanical issues with the design of the mesh that create strong amounts of friction between the mesh and the underlying tissue that subsequently cause that tissue to degrade resulting in injury;

    d.  the use and design of anchors in Pelvic Mesh Products which, when placed correctly, are likely to pass through and injure major nerve routes in the pelvic region;

    e.  degradation of the mesh itself over time which causes the internal tissue to degrade resulting in injury;

    f.  the welding of the mesh itself during production which creates a toxic substance that contributes to the degradation of the mesh and host tissue alike; and

    g.  the design of trocars, as devices to insert the Pelvic Mesh Products into the vagina, are defective because the device requires tissue penetration in nerve rich environments which results frequently in the destruction of nerve endings causing pain and other injuries.

93.    Defendants have consistently underreported and withheld information about their Products' propensity to fail and cause injury and complications, and have misrepresented the efficacy and safety of the Products through various means and media, actively and intentionally misleading the medical community, patients, and the public at large.

94.    Despite the chronic underreporting of the adverse events associated with the Defendants' Pelvic Mesh Products and the underreporting of events associated with similarly designed competitor products, enough complaints were recorded for the FDA to issue a public health notification regarding the danger of these devices.

95.    On October 20, 2008, the Food and Drug Administration ("FDA") issued a Public Health Notification that described over 1,000 complaints (otherwise known as "adverse events") that had been reported over a three-year period relating to pelvic mesh products. Although the FDA notice did not identify the transvaginal mesh manufacturers by name, a review of the FDA

MAUDE database indicates that the Defendants are one of the manufacturers of the products that are the subject of the notification.

96.     On July 13, 2011, the FDA issued a Safety Communication: "UPDATE on Serious Complications Associated with Transvaginal Placement of Surgical Mesh for Pelvic Organ Prolapse." Therein, the FDA advised that it had conducted an updated analysis of adverse events reported to the FDA and complications reported in the scientific literature and concluded that surgical mesh used in transvaginal repair of Pelvic Organ Prolapse was an area of "continuing serious concern." (Emphasis added.)  The FDA concluded that serious complications associated with surgical mesh for transvaginal repair of Pelvic Organ Prolapse, were "not rare."  These serious complications include, but are not limited to: neuromuscular problems, vaginal scarring/shrinkage and emotion problems.  Many of the serious complications required medical and surgical treatment and hospitalization.    The FDA concluded that it was not clear that transvaginal repair of Pelvic Organ Prolapse with mesh or repair of SUI with mesh kits was more effective than traditional non mesh repair of pelvic organ prolapse.  The FDA conducted a systematic review of the published scientific literature from 1996-2011 and concluded that based thereon, that transvaginal pelvic organ prolapse repair with mesh "does not improve symptomatic results or quality of life over traditional non mesh repair."  In the July 13, 2011 Safety Communication, the FDA concluded that a "mesh procedure may put the patient at risk for requiring additional surgery or for the development of new complications.  Removal of the mesh due to mesh complications may involve multiple surgeries and significantly impair the patient's quality of life.  Complete removal of mesh may not be possible."  The information contained in the FDA's Public Health Notification of October 2008 and the FDA Safety Communication of July 13, 2011, was known or knowable to defendants and was not disclosed in oral or written communications, direct to consumer advertising in the form of patient brochures, instructions for use or labeling.

97.     Defendants failed to perform or rely on proper and adequate testing and research in order to determine and evaluate the risks and benefits of its Pelvic Mesh Products.

98.     Defendants failed to design and establish a safe, effective procedure for removal of their Products in the event of a failure, injury, or complication associated with the devices.

99.     Feasible and suitable alternatives for the treatment of pelvic organ prolapse and stress urinary incontinence, as compared to Defendants' Products, have existed at all times relevant hereto.

100.    The Pelvic Mesh Products were at all times utilized and implanted in a manner foreseeable to the Defendants, as Defendants generated the instructions for use, created the procedures for implanting the devices, and trained the implanting physicians.

101.    Defendants have provided incomplete, insufficient, and misleading training and information regarding their Products to physicians to increase the number of physicians utilizing these Products, and thus increasing sales of the Products, which has also lead to the dissemination of inadequate and misleading information to patients, including the Implant Plaintiffs.

102.    The Pelvic Mesh Products implanted into the Implant Plaintiffs were in the same or substantially similar condition as they were when they left the possession of Defendants, and in the condition directed by and expected by the Defendants.

103.    The Implant Plaintiffs and their physicians foreseeably used and implanted the Pelvic Mesh Products, and did not misuse or alter the Products in an unforeseeable manner.

104.    The injuries, conditions and complications suffered by women who have been implanted with Defendants' Pelvic Mesh Products included but are not limited to: mesh erosion; mesh contraction; infection; fistula; inflammation; scare tissue; organ perforation; dyspareunia (pain during sexual intercourse); blood loss; neuropathic and other acute and chronic nerve damage and pain; pudendal nerve damage; pelvic floor damage; chronic pelvic pain; urinary and fecal incontinence; prolapse of organs; and in many cases women have been forced to undergo intensive medical treatment, including, but not limited to operations to locate and remove the mesh, operations to attempt to repair pelvic organs, tissue, and nerve damage, the use of pain control and other medications, injections into various areas of the pelvic, spine, and the vaginal, and operations to remove portions of the female genitalia.

105.   The Medical and scientific literature studying the effects of polypropylene pelvic mesh, like Defendants' Pelvic Mesh, have examined each of these injuries, conditions, and complications and determined that they are in fact causally related to the mesh itself and do not often implicate errors related to the implantation of the devices.

106.   Defendants misrepresented to the medical and healthcare community, Plaintiffs, and the public that the Pelvic Mesh Products had been tested and were found to be safe and effective for the purposes of treating stress urinary incontinence and/or prolapse.

107.   These representations were made by Defendants with the intent of inducing the medical community, Plaintiffs, and the public, to recommend, prescribe, dispense, and purchase the Products for use as a means of treatment for stress urinary incontinence and/or pelvic organ prolapse, all of which evinced an indifference to the health, safety and welfare of the Plaintiffs.

108.   Defendants failed to undertake their duties to properly know the qualities of their products and in representations to Plaintiffs and/or to Plaintiffs' healthcare providers, concealed and intentionally omitted the following material information:

    a.   That the Pelvic Mesh Products were not as safe as other products and procedures available to treat incontinence and/or prolapse;

    b.   That the risk of adverse events with the Pelvic Mesh Products was higher than with other products and procedure available to treat incontinence and/or prolapse;

    c.   That the risk of adverse of adverse events with Pelvic Mesh Products was not adequately tested and were known by Defendants;

    d.   That the limited clinical testing revealed that Pelvic Mesh Products had a higher risk of adverse effects, in addition to, and above and beyond those associated with other products and procedures available to treat incontinence and/or prolapse

    e.   That defendants failed to follow up on adverse results from clinical studies and buried and/or misrepresented those findings;

f. That Defendants were aware of dangers in the Pelvic Mesh Products in addition to and above and beyond those associated with other products and procedures available to treat incontinence and/or prolapse;

g. That the Pelvic Mesh Products were dangerous and caused adverse side effects, including but not limited to higher incidence of erosion and failure, at a much more significant rate than other products and procedures available to treat incontinence and/or prolapse;

h. That patients needed to be monitored more regularly than usual while using the Pelvic Mesh Products and that in the event the products needed to be removed that the procedures to remove them had a very high failure rate and/or needed to be performed repeatedly; Thus

i. that the Pelvic Mesh Products were manufactured negligently;

j. that the Pelvic Mesh Products were manufactured defectively; and

k. that the Pelvic Mesh Products were designed negligently and designed defectively.

109. Defendants were under a duty to disclose to Plaintiffs and their physicians, the defective nature of the Pelvic Mesh Products, including, but not limited to, the heighted risks of erosion, failure and permanent injury.

110. Defendants had sole access to material facts concerning the defective nature of the Products and their propensity to cause serious and dangerous side effects and hence, cause dangerous injuries and damage to persons who used the Pelvic Mesh Products.

111. Defendants' concealment and omissions of material fact concerning the safety of the Pelvic Mesh Products were made to cause Plaintiffs' physicians and healthcare providers to purchase, prescribe, and/or dispense the Products; and/or to mislead Plaintiffs into reliance and cause Plaintiffs to use the Pelvic Mesh Products.

112. At the time these misrepresentations were made by Defendant, and at the time Plaintiffs used the Pelvic mesh Products, Plaintiffs were unaware of the falsehood of these representations, and reasonably believed them to be true.

113.    Defendants knew and had reason to know that the Pelvic Mesh Products could and would cause severe and grievous personal injury to the users of the Pelvic Mesh Products, and that they were inherently dangerous in a manner that exceeded any purported, inaccurate, or otherwise downplayed warnings.

114.    As a result of Defendants' research and testing or lack thereof, Defendants distributed false information, including but not limited to assuring Plaintiffs, the public, and Plaintiffs' healthcare providers and physicians, that the Pelvic Mesh Products were safe for use as a means of providing relief from stress urinary incontinence and/or prolapse and were as safe or safer than other products and/or procedures available and on the market. As a result of Defendants' research and testing, or lack thereof, Defendants intentionally omitted, concealed and suppressed certain results of testing and research to healthcare professionals, Plaintiffs, and the public at large.

115.    Defendants had a duty when disseminating information to the public to disseminate truthful information; and a parallel duty not to deceive the public, Plaintiffs, Plaintiffs' healthcare providers, and the FDA.

116.    The information distributed to the public, the medical community, the FDA, and Plaintiffs by Defendants included, but was not limited to, reports, press releases, advertising campaigns, television commercials, print advertisements, billboards and other commercial medical containing material representations, which were false and misleading, and contained omissions and concealment of the truth about the dangers of the use of the Pelvic Mesh Products.

117.    Defendants intentionally made material misrepresentations to the medical community and public, including Plaintiffs, regarding the safety of the Pelvic Mesh Products, specifically that the Pelvic Mesh Products did not have dangerous and/or serious adverse health safety concerns, and that the Pelvic Mesh Products were as safe as other means of treating vaginal vault prolapse, stress urinary incontinence, pelvic organ prolapse or rectocele.

118.    Defendants intentionally failed to inform the public, including Plaintiffs, of the high failure rate including erosion, the difficulty of removing the mesh and the risk of permanent injury.

119.    Defendants chose to over-promote the safety, efficacy and benefits of the Pelvic mesh

Products instead.

120.    Defendants' intent and purpose in making these misrepresentations was to deceive the public, the medical community, and Plaintiffs; to gain the confidence of the public, the medical community, and Plaintiffs; to falsely assure them of the quality and fitness for use of the Pelvic Mesh Products; and to induce Plaintiffs, the public and the medical community to request, recommend, prescribe, dispense, purchase and continue to use the Pelvic Mesh Products.

121.    Defendants made claims and representations in its documents submitted to the FDA and its reports to the public and to healthcare professionals and in advertisements that the Products did not present serious health risks.

122.    These misrepresentations, and others made by Defendants, were false when made and/or were made with the pretense of actual knowledge when such knowledge did not actually exist, and were made recklessly and without regard to the true facts.

123.    These representations, and others made by Defendants, were made with the intention of deceiving Plaintiffs, Plaintiffs' healthcare professionals and other members of the healthcare community, and were made in order to induce Plaintiffs, and their respective healthcare professionals, to rely on misrepresentations, and caused Plaintiffs to purchase, rely, use, and request the Pelvic Mesh Products and their healthcare professionals to dispense, recommend, or prescribe the Pelvic Mesh Products.

124.    Defendants recklessly and/or intentionally falsely represented the dangerous and serious health and safety concerns inherent in the use of the Pelvic Mesh Products to the public at large, for the purpose of influencing the sales of products known to be dangerous and defective, and/or not as safe as other alternatives.  Defendants utilized direct-to-consumer advertising to market, promote, and advertise the Pelvic Mesh Products.

125.    At the time the representations were made, Plaintiffs and their healthcare providers did not know the truth about the dangers and serious health and/or safety risks inherent in the use of the Pelvic Mesh Products.  Plaintiffs did not discover the true facts about the dangers and serious health and/or safety risks, nor did Plaintiffs discover the false representations of Defendants, nor

would Plaintiffs with reasonable diligence have discovered the true facts of Defendants' misrepresentations.

126.    Had Plaintiffs known the true facts about the dangers and serious health and/or safety risks of the Pelvic Mesh Products, Plaintiff would not have purchased, used, or relied on Defendants' Pelvic Mesh Products.

127.    At all times relevant to this action, Defendants knew that the Pelvic Mesh Products were not safe for the patients for whom they were prescribed and implanted, because the mesh eroded and otherwise malfunctioned, and therefore failed to operate in a safe and continuous manner, causing injuries from erosion, extrusion, infection, sepsis, chronic foreign body invasion, dense adhesions and dyspareunia.  Removal of eroded or infected mesh brings a high rate of life-threatening complications including permanent disfigurement and hemorrhage. Removal can require multiple surgical in interventions in the operating thereafter for complete removal and results in scarring on fragile compromised pelvic tissue and muscles.

128.    At all relevant times herein, Defendants continued to promote Pelvic Mesh Products as safe and effective even when no clinical trials had been done supporting long or short-term efficacy.

129.    In doing so the Defendants concealed the known risks and failed to warn of known or scientifically knowable dangers and risks associated with the Pelvic Mesh Products for treatment of vaginal vault prolapse, stress urinary incontinence, pelvic organ prolapse or rectocele.

130.    At all relevant times herein, Defendants failed to provide sufficient warnings and instructions that would have put Plaintiffs and the general public on notice of the dangers and adverse effects caused by implantation of the Pelvic Mesh Products system including, but not limited to, extreme and chronic pain, mesh erosion, infection, dyspareunia, infection, sepsis, permanent disfigurement and the need for corrective surgeries.

131.    The Pelvic Mesh Products as designed, manufactured, distributed, sold and/or supplied by Defendants were defective as marketed due to inadequate warnings, instructions, labeling and/or inadequate testing in the presence of Defendants knowledge of pack of pelvic health

safety.

132.    At all times herein mentioned, the officers and/or directors of the Defendants Ethicon/Gynecare/J&J Pelvic and DOES 1 through 100, and each of them named herein, participated in, authorized and/or directed the production and promotion of the aforementioned products when they knew of the hazards and dangerous propensities of said products, and thereby actively participated in the tortuous conduct that resulted in the injuries suffered by Plaintiffs.

133.    The devices used in Plaintiffs' surgeries were Ethicon/Gynecare/J&J Pelvic Mesh Products, each of which was designed, manufactured by Defendant Ethicon/Gynecare/J&J.

134.    Upon information and belief, the pain that Plaintiffs suffered after the surgeries, and continue to suffer, was caused by negligent design and manufacture of the Pelvic Mesh Devices that were surgically implanted in them.

135.    Plaintiffs' injuries were caused by the negligent design and manufacturing of the Pelvic Mesh Products, which is supported by the fact that the FDA has received thousands of reports of women who were injured or killed after being implanted with devices similar to that used in Plaintiffs' procedures.

136.    At all times that the Pelvic Mesh Products were implanted in Plaintiffs, the Pelvic Mesh Products were being used for the purpose that Defendants marketed the products.

137.    After, and as a result of the implantation of the Pelvic Mesh Products, Plaintiffs suffered serious bodily injuries including, but not limited to, extreme pain, erosion, infection, dyspareunia, urinary problems, the need for additional surgery and other injuries. These injuries would not have occurred but for the defective nature of the products implanted and/or Defendants' wrongful conduct.

138.    As a result of having the Pelvic Mesh Products implanted, Plaintiffs have experienced significant mental and physical pain and suffering, have required additional medical treatment, and have sustained permanent injury.

139.    As a result of the aforesaid conduct and defective product manufactured, sold, distributed, advertised, and promoted by Defendants, Plaintiffs were injured in their health, strength,

and activity, sustaining injury to their persons, all of which injuries have caused Plaintiffs severe mental and physical pain and suffering. Plaintiffs are informed and believe, and allege thereon, that such injuries will result in some permanent disability to their bodies. As a result of such injuries, Plaintiffs have suffered general damages in an amount within the jurisdiction of the state court.

140.    As a further result of the aforesaid conduct and defective product manufactured, sold, distributed, advertised, and promoted by Defendants, Plaintiffs were required to and employed healthcare providers and incurred medical and incidental expenses; further, Plaintiffs are informed and believe, and allege thereon, that Plaintiffs may be required to incur additional medical, hospital and incidental expenses thereto, all according to proof.

<u>**FIRST CAUSE OF
ACTION**</u>

**[Strict Liability – Failure to Warn]**

141.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein and further allege as follows:

142.    Defendants manufactured, sold and/or distributed the Pelvic Mesh Products to Plaintiffs to be used for the treatment of stress urinary incontinence and/or pelvic organ prolapse.

143.    At all times mentioned herein, the Pelvic Mesh Products were and are, dangerous and presented a substantial danger to patients who were implanted with the Pelvic Mesh Devices, and these risks and dangers were known or knowable at the time of distribution and implantation in Plaintiff. Ordinary consumers would not have recognized the potential risks and dangers the Pelvic Mesh Products posed to pelvic reconstruction patients because its uses was specifically promoted to improve the health of such patients. The Pelvic Mesh Products were used in a way reasonable foreseeable to Defendants by Plaintiffs. Defendants failed to provide warnings of such risks and dangers to Plaintiffs as described herein.

144.    As a result of the implantation of the Pelvic Mesh Products Plaintiffs suffered debilitating injuries including extreme pain, erosion, dyspareunia, urinary problems, recurrent

incontinence, and for some Plaintiffs the need for additional surgery.

145.    In doing the acts herein described, the Defendants acted with oppression, fraud and malice, and Plaintiffs are therefore entitled to punitive damages to deter Defendants and others from engaging in similar conduct in the future.    Said wrongful conduct was done with advance knowledge, authorization and/or ratification of an officer, director and/or managing agent of the Defendants.

146.    At all times herein mentioned, the Pelvic Mesh Products were being used as intended by Defendants and in a manner foreseeable to Defendants.

147.    As a result of the defective condition of the Pelvic Mesh Products, namely the lack of sufficient warnings, Plaintiffs have suffered the injuries and damages alleged herein.

WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## SECOND CAUSE OF ACTION

### [Strict Liability – Manufacturing Defect]

148.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein and further allege as follows:

149.    At all times herein mentioned, Defendants' Pelvic Mesh Products were prescribed and used as intended by Defendants and in a manner reasonably foreseeable to Defendants.

150.    The Pelvic Mesh Products were defective at the time of their manufacture, development, production, testing, inspection, endorsement, prescription, sale and distribution, and at the time they left the possession of the Defendants, in that, and not by way of limitation, the products differed from the Defendants' intended result and intended design and specifications, and from other ostensibly identical units of the same product line.

151.    As a proximate and legal result of the defective condition of the Pelvic Mesh Products, Plaintiffs were caused to suffer and will continue to suffer the herein described injuries and damages.

WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set forth.

### THIRD CAUSE OF ACTION

**[Strict Products Liability – Design Defect]**

152.     Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein and further allege as follows:

153.     The Pelvic Mesh Products were designed, engineered, developed, manufactured, fabricated, assembled, equipped, tested or failed to test, inspected of failed to inspect, labeled, advertised, promoted, marketed, supplied, licensed, distributed, wholesaled, and sold by Defendants.

154.     The Pelvic Mesh Products manufactured, licensed, supplied, and/or placed into the stream of commerce by Defendants were defective and unreasonably dangerous in that

      a.  The foreseeable risks exceeded the benefits associated with the Products design or formulation;

      b.  They contained inadequate post-marketing warnings or instructions; and

      c.  .They were more dangerous than would be expected or appreciated by an ordinary consumer.

155.     The Pelvic Mesh Products that were manufactured, supplied, and/or placed into the stream of commerce by Defendants were more dangerous than an ordinary customer would expect, and more dangerous than other Products or procedures available to treat stress urinary incontinence, pelvic organ prolapse and/or rectocele repair.

156.     The design defects in Defendants' Products existed at the time when the Products left Defendants' control.

157.     Defendants knew that the Products were to be purchased and used without inspection for defects.

158.     The Pelvic Mesh Products were and are unsafe for their intended and foreseeable uses

by reason of defects in the design so that they would not safely serve its purpose, but would instead expose the users of said Products to incur serious injuries.

159.    Plaintiffs used the Products in a reasonably foreseeable manner.

160.    Defendants designed the Products defectively, causing them to fail to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeably manner.

161.    As a direct and proximate result of the aforementioned defects in the design of the Products, Plaintiffs sustained the injuries and damages set forth herein.

\WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## FOURTH CAUSE OF ACTION
### [Negligence]

162.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein and further allege as follows:

163.    At all times herein mentioned, Defendants, and each of them, were and are engaged in the business of researching, manufacturing, licensing, fabricating, designing, labeling, distributing, using, supplying, selling, marketing, warranting, packaging and advertising the Pelvic Mesh Products.

164.    Defendants, and each of them, owed to Plaintiffs and the public a duty to act reasonably and to exercise ordinary care in pursuit of the activities mentioned above, and Defendants, and each of them, breached said duty of due care.

165.    At all times relevant hereto, Defendants, and each of them, owed to Plaintiffs and the public a duty to act reasonably and to exercise ordinary care with respect to the safe, legal, and proper manufacture, license, design, formulation, distribution, production, processing, assembly, testing, inspection, research, marketing, labeling, packaging, preparation for use, issuance of warnings with respect to promotion, advertising, sale, and safety monitoring of the Products, and to

adequately test and warn of the risk and dangers of the Products, both before and after sale.

166.     Additionally, Defendants, and each of them, owed to Plaintiffs and the public a duty to provide accurate, reliable, and completely truthful information regarding the safety and any dangerous propensities of the Products manufactured, used, distributed, and/or supplied by then and to provide accurate, reliable, and completely truthful information regarding the failure of the Products to perform as intended or as an ordinary consumer would expect.

167.     At all times relevant hereto, Defendants, and each of them, singularly and jointly, breached the aforementioned duties in that they negligently and carelessly manufactured, fabricated, designed, licensed, produced, compounded, assembled, inspected or failed to inspect, tested or failed to test, warned or failed to warn of the health hazards, labeled, distributed, handled, used, supplied, sold, marketed, warranted, packaged, promoted and advertised the Pelvic Mesh Products in that said Products caused, directly and proximately, the injuries of Plaintiff through failure of the Products to perform as intended or as an ordinary consumer would expect.

168.     The acts of Defendants, and each of them, as herein alleged, constitute violations of the duty of ordinary care and skill owed by Defendants, and each of them, to Plaintiffs.

169.     Plaintiffs used, handled, or were implanted with Defendants Products referred herein in a manner that was reasonably foreseeable.

170.     As the direct and proximate result of Defendants' breach of their aforementioned duties with respect to the Products, Plaintiffs suffered the injuries and damages alleged herein.

WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## FIFTH CAUSE OF ACTION

### [Breach of Implied Warranty]

171.     Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein and further allege as follows:

172.     Defendants, and each of them, impliedly warranted to the Plaintiffs, their prescribing physicians and healthcare providers, the medical scientific, pharmaceutical and health communities,

the FDA, and the public, in general, that the Products were of merchantable quality and safe and fit for the use for which they were intended.

173.    Plaintiffs and their physicians and healthcare providers were, and remain, unskilled in the research, design and manufacture of the Products and reasonably relied on the skill, judgment and implied warranty of Defendants in using the aforementioned Products.

174.    Defendants breached their warranties in that the Products were neither safe for their intended use nor of merchantable quality, as warranted by Defendants, in that the Products had dangerous propensities and known or knowable side effects when put to their intended use and would cause severe injuries to the user, which propensities and side effects were known or knowable but were not warned of by Defendants.

175.    As a result of the aforementioned breach of implied warranties by Defendants and each of them, Plaintiffs suffered injuries and damages as alleged herein.

176.    After Plaintiffs were made aware their injuries were a result of the aforesaid Pelvic Mesh Products, Defendants had ample and sufficient notice of breach of said warranty.

WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## SIXTH CAUSE OF ACTION

### [Breach of Express Warranty]

177.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein and further allege as follows:

178.    Defendants expressly warranted to Plaintiffs and/or their authorized agents or sales representations, in publications, and other communications intended for medical patients, and the general public, that the defective Pelvic Mesh Products were safe, effective, fit and proper for their intended use.

179.    Plaintiffs and Plaintiffs' physicians reasonably relied upon the skill and judgment of Defendants, and upon said express warranty, in using the aforesaid products.  The warranty and representations were untrue in that the product caused severe injury to Plaintiffs and was unsafe

and, therefore, unsuited for the use in which it was intended and caused Plaintiffs to sustain damages and injuries herein alleged.

180.    As soon as the true nature of the products, and the fact that the warranty and representations were false, were ascertained, said Defendants had ample and sufficient notice of the breach of said warranty.

WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## SEVENTH CAUSE OF ACTION

### [Negligent Misrepresentation]

181.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein and further allege as follows:

182.    Defendants from the time that the Pelvic Mesh Products were first tested, studied, researched, first manufactured, marketed and distributed, and up to the present,  made false representations, as previously set forth herein, to the Plaintiffs, their prescribing physicians and healthcare providers, the medical, scientific, pharmaceutical and healthcare communities, and the public in general, including, but not limited to, the misrepresentation that the Pelvic Mesh Products were safe, fit, and effective for the treatment of pelvic organ prolapse, stress urinary incontinence, and/or rectocele repair.

183.    At all times relevant hereto, Defendants conducted a sales and marketing Campaign to promote the sale of the Pelvic Mesh Products and willfully deceive the Plaintiffs, their prescribing physicians and healthcare providers, the medical, scientific, pharmaceutical and healthcare communities, and the public in general as to the health risks and consequences of the use of the Pelvic Mesh Products.

184.    Defendants made the foregoing misrepresentations without any reasonable ground for believing them to be true. These misrepresentations were made directly by Defendants, by sales representatives, detail persons and other authorized agents of said Defendants, and in publications and other written materials directed to the Plaintiffs, their prescribing physicians and healthcare

providers, the medical, scientific, pharmaceutical and healthcare communities, and the public in general with the intention of inducing reliance and the purchase and implantation of the Pelvic Mesh Products.

185.    The foregoing representations by Defendants were in fact false in that the Pelvic Products are not, and at all relevant times alleged herein, were not safe, fit, and effective for the treatment of pelvic organ prolapse, stress urinary incontinence and/or rectocele, the use of the Pelvic Mesh Products is hazardous to health, and the Pelvic Mesh Products have a significant propensity to cause serious injuries to users including, but not limited to, the injuries suffered as described herein. The foregoing misrepresentations by Defendants were made with the intention of inducing reliance and inducing the purchase and implantation of Pelvic Mesh Products.

186.    In reliance on the misrepresentations be Defendants, Plaintiffs and their prescribing physicians and healthcare providers were induced to purchase use the Pelvic Mesh Products. If they had known of the true facts and the facts concealed by Defendants, they would not have used the Pelvic Mesh Products, and their reliance upon Defendants' misrepresentations was justified because such misrepresentations were made and conducted by individuals and entities that were in a position to know the true facts.

187.    As a result of the concealment of the facts set forth above, Plaintiffs sustained injuries as set forth herein.

WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## **EIGHT CAUSE OF ACTION**
### **[Fraud by Concealment]**

188.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein and further allege as follows:

189.    At all times mentioned herein, Defendants had the duty and obligations to disclose to Plaintiff and to her physicians, the true facts concerning the Pelvic Mesh Products, that is, that said

products were dangerous and defective, lacking efficacy for their purported use and lacking safety in normal use, and how likely it was to cause serious consequences to users including permanent and debilitating injuries. Defendants made the affirmative representations as set forth above to Plaintiffs and their physicians and the general public prior to the date the Pelvic Mesh Products were implanted in Plaintiffs, while concealing material facts.

190.    At all times herein mentioned, Defendants, and each of them, willfully, and maliciously concealed facts as set forth above from Plaintiffs and their physicians, and therefore Plaintiffs, with the intent to defraud as herein alleged.

191.    At all times herein mentioned, neither Plaintiffs nor their physicians were aware of the facts set for the above, and had they been aware of said fact, they would not have acted as they did, that is, would not have reasonably relied upon said representations of safety and efficacy and utilized the Pelvic Mesh Products for correction of urinary incontinence, pelvic organ prolapse, vaginal vault prolapse and rectocele. Defendants' misrepresentations were a substantial fact in Plaintiffs utilizing the Pelvic Mesh Products for correction of their medical conditions.

192.    As a result of the concealment of the facts set for the above, Plaintiffs sustained injuries as set forth herein.

193.    The herein-described conduct of said Defendants, and each of them, was willful, malicious, fraudulent, outrageous and in conscious disregard and indifference to the safety and health of patients with pelvic medical conditions, such as Plaintiffs. Plaintiffs, for the sake of example and by way of punishing said Defendants, seek punitive damages according to proof.

WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1.    For past and future general damages, according to proof;

2.    For past and future medical and incidental expenses, according to proof;

3.      For past and future loss of earnings and/or earning capacity, according to proof;

4.      For future medical monitoring costs, according to proof;

5.      For punitive and exemplary damages in an amount to be determined at trial;

6.      For injunctive relief, enjoining Defendants from the acts of unfair competition and untrue and misleading advertising;

7.      For a disgorgement of profits, according to proof. .

8.      For such other and further relief as the Court may deem just and proper, including costs and prejudgment interest as provided in C.C.P. section 998, C.C.P. section 1032, and related provisions of law.

DATED:  August 11, 2016           **NAPOLI SHKOLNIK, PLLC**

By:   /s/ Sean Barth
Sean P. Barth, MO Bar # 57015
Mark Twain Plaza II
103 West Vandalia Street, Suite 125
Edwardsville, IL 62025
SBarth@napolilaw.com
**ATTORNEYS FOR PLAINTIFF**

JURY DEMAND

Plaintiffs each demand an individual trial by jury on all issues which may be tried by a jury.

DATED:  August 11, 2016           **NAPOLI SHKOLNIK, PLLC**

By:   /s/ Sean Barth
Sean P. Barth, MO Bar # 57015
Mark Twain Plaza II
103 West Vandalia Street, Suite 125
Edwardsville, IL 62025
SBarth@napolilaw.com
**ATTORNEYS FOR PLAINTIFF**

**1622-CC09982**

# IN THE CIRCUIT COURT
# STATE OF MISSOURI
# TWENTY-SECOND JUDICIAL CIRCUIT
## (City of St. Louis)

| | | |
|---|---|---|
| WANDA REDDICK, et al., | ) | |
| | ) | ASBESTOS |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cause No. |
| | ) | |
| GYNECARE, INC., *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

COME NOW Plaintiffs, WANDA REDDICK, et al., by and through their attorneys NAPOLI SHKOLNIK PLLC and requests that service of summons, petition and acknowledgment of service to be sent via certified mail, postage prepaid, to all parties, pursuant to Rule 54.16 in the above-referenced litigation. Plaintiffs counsel will complete service without the use of the St. Louis City Sheriff.

Respectfully submitted,

**NAPOLI SHKOLNIK, PLLC**

By: */s/ Sean P. Barth*
    Sean P. Barth, MO Bar #57015
    Mark Twain Plaza II
    103 West Vandalia Street, Suite 125
    Edwardsville, IL 62025
    SBarth@NapoliLaw.com
    **ATTORNEY FOR PLAINTIFF**



**IN THE 22ND JUDICIAL CIRCUIT COURT, CITY OF ST LOUIS, MISSOURI**

| Judge or Division:<br>BRYAN L HETTENBACH | Case Number: 1622-CC09982 |
|---|---|
| Plaintiff/Petitioner:<br>WANDA REDDICK<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>SEAN PATRICK BARTH<br>2236 SPENCER AVE<br>SAINT LOUIS, MO 63114 |
| Defendant/Respondent:<br>GYNECARE, INC | Court Address:<br>CIVIL COURTS BUILDING<br>10 N TUCKER BLVD<br>SAINT LOUIS, MO 63101 |
| Nature of Suit:<br>CC Pers Injury-Prod Liab | (Date File Stamp) |

## Summons for Service by Registered or Certified Mail

**The State of Missouri to:  GYNECARE, INC**
**Alias:**

**235 CONSTITUTION DRIVE**
**MENLO PARK, CA  94025**



*COURT SEAL OF*

*CITY OF ST LOUIS*

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner, or Plaintiff/Petitioner, if pro se, at the above address all within 30 days after the return registered or certified mail receipt signed by you has been filed in this cause.  If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in the petition.

| **AUGUST 15, 2016** | **THOMAS KLOEPPINGER** |
|---|---|
| Date Issued | Clerk |

Further Information:

### Certificate of Mailing

I certify that on _____ (date), I mailed a copy of this summons and a copy of the petition to Defendant/Respondent  GYNECARE, INC by registered or certified mail, requesting a return receipt by the addressee only, to the said Defendant/Respondent at the address furnished by Plaintiff/Petitioner.

_____
                Date



## IN THE 22ND JUDICIAL CIRCUIT COURT, CITY OF ST LOUIS, MISSOURI

| | |
|---|---|
| Judge or Division:<br>BRYAN L HETTENBACH | Case Number: 1622-CC09982 |
| Plaintiff/Petitioner:<br>WANDA REDDICK<br><div align="right">vs.</div> | Plaintiff's/Petitioner's Attorney/Address:<br>SEAN PATRICK BARTH<br>2236 SPENCER AVE<br>SAINT LOUIS, MO 63114 |
| Defendant/Respondent:<br>GYNECARE, INC | Court Address:<br>CIVIL COURTS BUILDING<br>10 N TUCKER BLVD<br>SAINT LOUIS, MO 63101 |
| Nature of Suit:<br>CC Pers Injury-Prod Liab | (Date File Stamp) |

### Summons for Service by Registered or Certified Mail

**The State of Missouri to:  ETHICON INC**
                Alias:

**180 CHEROKEE STREET NE**
**MARIETTA, GA  30060**



*COURT SEAL OF*

*CITY OF ST LOUIS*

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner, or Plaintiff/Petitioner, if pro se, at the above address all within 30 days after the return registered or certified mail receipt signed by you has been filed in this cause.  If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in the petition.

**AUGUST 15, 2016**
Date Issued

**THOMAS KLOEPPINGER**
Clerk

Further Information:

### Certificate of Mailing

I certify that on _____ (date), I mailed a copy of this summons and a copy of the petition to Defendant/Respondent  ETHICON INC by registered or certified mail, requesting a return receipt by the addressee only, to the said Defendant/Respondent at the address furnished by Plaintiff/Petitioner.

_____
Date



# IN THE 22ND JUDICIAL CIRCUIT COURT, CITY OF ST LOUIS, MISSOURI

| Judge or Division:<br>BRYAN L HETTENBACH | Case Number:  1622-CC09982 |
|---|---|
| Plaintiff/Petitioner:<br>WANDA REDDICK<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>SEAN PATRICK BARTH<br>2236 SPENCER AVE<br>SAINT LOUIS, MO  63114 |
| Defendant/Respondent:<br>GYNECARE, INC | Court Address:<br>CIVIL COURTS BUILDING<br>10 N TUCKER BLVD<br>SAINT LOUIS, MO  63101 |
| Nature of Suit:<br>CC Pers Injury-Prod Liab | (Date File Stamp) |

## Summons for Service by Registered or Certified Mail

**The State of Missouri to:**  JOHNSON & JOHNSON
            Alias:

**ONE JOHNSON & JOHNSON PLAZA**
**NEW BRUNSWICK, NJ  08933**



*COURT SEAL OF*

*CITY OF ST LOUIS*

        You are summoned to appear before this court and to file your pleading to the petition, copy
of which is attached, and to serve a copy of your pleading upon the attorney for the
Plaintiff/Petitioner, or Plaintiff/Petitioner, if pro se, at the above address all within 30 days after the
return registered or certified mail receipt signed by you has been filed in this cause.  If you fail to
file your pleading, judgment by default will be taken against you for the relief demanded in the
petition.

| **AUGUST 15, 2016**<br>Date Issued | **THOMAS KLOEPPINGER**<br>Clerk |
|---|---|

        Further Information:

## Certificate of Mailing

        I certify that on _____ (date), I mailed a copy of this summons and a copy of the petition to

Defendant/Respondent  JOHNSON & JOHNSON by registered or certified mail, requesting a return receipt by the addressee

only, to the said Defendant/Respondent at the address furnished by Plaintiff/Petitioner.

_____
        Date

_____

 **IN THE 22ND JUDICIAL CIRCUIT COURT, CITY OF ST LOUIS, MISSOURI**

| Judge or Division:<br>BRYAN L HETTENBACH | Case Number: 1622-CC09982 |
|---|---|
| Plaintiff/Petitioner:<br>WANDA REDDICK<br><div align="right">vs.</div> | Court Address:<br>CIVIL COURTS BUILDING<br>10 N TUCKER BLVD<br>SAINT LOUIS, MO  63101 |
| Defendant/Respondent:<br>GYNECARE, INC | |
| Nature of Suit:<br>CC Pers Injury-Prod Liab | (Date File Stamp) |

<div align="center">

## Notice and Acknowledgement for Service by Mail
(Circuit Division Cases)

**Notice**

</div>

**To:  GYNECARE, INC**

**235 CONSTITUTION DRIVE**
**MENLO PARK, CA  94025**

The enclosed summons and petition are served pursuant to Missouri Supreme Court Rule 54.16.

You may sign and date the acknowledgement part of this form and return one copy of the completed form to the sender within thirty days of 15-AUG-2016.

If you are served on behalf of a corporation, unincorporated association, including a partnership, or other entity, you must indicate under your signature your relationship to that entity.  If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

If you do not complete and return the form to the sender within thirty days, you or the party on whose behalf you are being served may be required to pay any expenses incurred in serving a summons and petition in any other manner permitted by law.

If you do complete and return this form, you or the party on whose behalf you are being served must answer the petition within thirty days of the date you sign in acknowledgment below.  If you fail to do so, judgment by default may be taken against you for the relief demanded in the petition.

**I declare, under penalty of perjury, that this notice was mailed on 15-AUG-2016.**

<div align="right">

_____
Signature

</div>

<div align="center">

### Acknowledgment of Receipt of Summons and Petition

</div>

I declare, under penalty of filing a false affidavit, that I received a copy of the Summons and of the Petition in the above captioned matter.

_____           _____
Date                                                              Signature

<div align="right">

_____
Relationship to Entity/Authority to receive service of process

</div>



## IN THE 22ND JUDICIAL CIRCUIT COURT, CITY OF ST LOUIS, MISSOURI

| Judge or Division:<br>BRYAN L HETTENBACH | Case Number: 1622-CC09982 |
|---|---|
| Plaintiff/Petitioner:<br>WANDA REDDICK | Court Address:<br>CIVIL COURTS BUILDING<br>10 N TUCKER BLVD<br>SAINT LOUIS, MO  63101 |
| **vs.** | |
| Defendant/Respondent:<br>GYNECARE, INC | |
| Nature of Suit:<br>CC Pers Injury-Prod Liab | (Date File Stamp) |

## Notice and Acknowledgement for Service by Mail
### (Circuit Division Cases)

**Notice**

To:  ETHICON INC

180 CHEROKEE STREET NE
MARIETTA, GA  30060

The enclosed summons and petition are served pursuant to Missouri Supreme Court Rule 54.16.

You may sign and date the acknowledgement part of this form and return one copy of the completed form to the sender within thirty days of 15-AUG-2016.

If you are served on behalf of a corporation, unincorporated association, including a partnership, or other entity, you must indicate under your signature your relationship to that entity.  If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

If you do not complete and return the form to the sender within thirty days, you or the party on whose behalf you are being served may be required to pay any expenses incurred in serving a summons and petition in any other manner permitted by law.

If you do complete and return this form, you or the party on whose behalf you are being served must answer the petition within thirty days of the date you sign in acknowledgment below.  If you fail to do so, judgment by default may be taken against you for the relief demanded in the petition.

**I declare, under penalty of perjury, that this notice was mailed on 15-AUG-2016.**

_____
Signature

---

**Acknowledgment of Receipt of Summons and Petition**

I declare, under penalty of filing a false affidavit, that I received a copy of the Summons and of the Petition in the above captioned matter.

_____        _____
Date                                                              Signature

_____
Relationship to Entity/Authority to receive service of process

 **IN THE 22ND JUDICIAL CIRCUIT COURT, CITY OF ST LOUIS, MISSOURI**

| Judge or Division:<br>BRYAN L HETTENBACH | Case Number: 1622-CC09982 |
|---|---|
| Plaintiff/Petitioner:<br>WANDA REDDICK<br><div align="right">vs.</div> | Court Address:<br>CIVIL COURTS BUILDING<br>10 N TUCKER BLVD<br>SAINT LOUIS, MO  63101 |
| Defendant/Respondent:<br>GYNECARE, INC | |
| Nature of Suit:<br>CC Pers Injury-Prod Liab | (Date File Stamp) |

## Notice and Acknowledgement for Service by Mail
### (Circuit Division Cases)

### Notice

**To:  JOHNSON & JOHNSON**

ONE JOHNSON & JOHNSON PLAZA
NEW BRUNSWICK, NJ  08933

The enclosed summons and petition are served pursuant to Missouri Supreme Court Rule 54.16.

You may sign and date the acknowledgement part of this form and return one copy of the completed form to the sender within thirty days of 15-AUG-2016.

If you are served on behalf of a corporation, unincorporated association, including a partnership, or other entity, you must indicate under your signature your relationship to that entity.  If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

If you do not complete and return the form to the sender within thirty days, you or the party on whose behalf you are being served may be required to pay any expenses incurred in serving a summons and petition in any other manner permitted by law.

If you do complete and return this form, you or the party on whose behalf you are being served must answer the petition within thirty days of the date you sign in acknowledgment below.  If you fail to do so, judgment by default may be taken against you for the relief demanded in the petition.

**I declare, under penalty of perjury, that this notice was mailed on 15-AUG-2016.**

_____
Signature

---

### Acknowledgment of Receipt of Summons and Petition

I declare, under penalty of filing a false affidavit, that I received a copy of the Summons and of the Petition in the above captioned matter.

_____     _____
Date                                          Signature

_____
Relationship to Entity/Authority to receive service of process



## IN THE 22ND JUDICIAL CIRCUIT COURT, CITY OF ST LOUIS, MISSOURI

| Judge or Division:<br>BRYAN L HETTENBACH | Case Number:  1622-CC09982 | RECEIVED<br>AUG 2 2 2016<br>Law Department |
|---|---|---|
| Plaintiff/Petitioner:<br>WANDA REDDICK<br><br>vs. | Plaintiffs/Petitioner's Attorney/Address<br>SEAN PATRICK BARTH<br>2236 SPENCER AVE<br>SAINT LOUIS, MO 63114 | |
| Defendant/Respondent:<br>GYNECARE, INC<br><br>Nature of Suit:<br>CC Pers In'u  -Prod Liab | Court Address:<br>CIVIL COURTS BUILDING<br>10 N TUCKER BLVD<br>SAINT LOUIS, MO 63101 | (Date File Stam ) |

### Summons for Service by Registered or Certified Mail

The State of Missouri to:  JOHNSON & JOHNSON
           Alias:

ONE JOHNSON & JOHNSON PLAZA
NEW BRUNSWICK, NJ 08933



*COURT SEAL OF*

*CITY OF ST LOUIS*

    You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner, or Plaintiff/Petitioner, if prose, at the above address all within 30 days after the return registered or certified mail receipt signed by you has been filed in this cause. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in the petition.

AUGUST 18, 2016
Date Issued

THOMAS KLOEPPINGER
Clerk

Further Information:

### Certificate of Mailing

I certify that on ~~August 18, 2016~~ (date), I mailed a copy of this summons and a copy of the petition to Defendant/Respondent  JOHNSON & JOHNSON by registered or certified mail, requesting a return receipt by the addressee only, to the said Defendant/Respondent at the address furnished by Plaintiff/Petitioner.

8/18/16
Date

IN THE 22ND JUDICIAL CIRCUIT COURT, CITY OF ST.LOUIS, MISSOURI

| Judge or Division:<br>BRYAN L HETTENBACH | Case Number:  1622-CC09982 |
|---|---|
| Plaintiff/Petitioner:<br>WANDA REDDICK<br><br><br>vs. | Court Address:<br>CIVIL COURTS BUILDING<br>10 N TUCKER BLVD<br>SAINT LOUIS, MO  63101 |
| Defendant/Respondent:<br>GYNECARE, INC | |
| Nature of Suit:<br>CC Pers Injury-Prod Liab | (Date File Stamp) |

## Notice and Acknowledgement for Service by Mail
### (Circuit Division Cases)

Notice

To:  JOHNSON & JOHNSON

ONE JOHNSON & JOHNSON PLAZA
NEW BRUNSWICK, NJ 08933

The enclosed summons and petition are served pursuant to Missouri Supreme Court Rule 54.16.

You may sign and date the acknowledgement part of this form and return one copy of the completed form to the sender within thirty days of 18-AUG-2016.

If you are served on behalf of a corporation, unincorporated association, including a partnership, or other entity, you must indicate under your signature your relationship to that entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

If you do not complete and return the form to the sender within thirty days, you or the party on whose behalf you are being served may be required to pay any expenses incurred in serving a summons and petition in any other manner permitted by law.

If you do complete and return this form, you or the party on whose behalf you are being served must answer the petition within thirty days of the date you sign in acknowledgment below. If you fail to do so, judgment by default may be taken against you for the relief demanded in the petition.

I declare, under penalty of perjury, that this notice was mailed on 18-AUG-2016.

_____
Signature

---

Acknowledgment of Receipt of Summons and Petition

I declare, under penalty of filing a false affidavit, that I received a copy of the Summons and of the Petition in the above captioned matter.

_____          _____
Date                                              Signature

_____
Relationship to Entity/Authority to receive service of process

---

Electronically Filed - City of St. Louis - August 11, 2016 - 02:37 PM

**1622-CC09982**

## IN THE CIRCUIT COURT
## STATE OF MISSOURI
## TWENTY-SECOND JUDICIAL CIRCUIT
### (City of St. Louis)

WANDA REDDICK, et al.,                          )
                                                )
        Plaintiff,                      )
                                                )
vs.                                             )        Cause No.
                                                )
GYNECARE, INC., *et al.,*                        )
                                                )
        Defendants.                     )

### MEMORANDUM

    COME NOW Plaintiffs, WANDA REDDICK, et al., by and through their attorneys NAPOLI SHKOLNIK PLLC and requests that service of summons, petition and acknowledgment of service to be sent via certified mail, postage prepaid, to all parties, pursuant to Rule 54.16 in the above-referenced litigation. Plaintiffs counsel will complete service without the use of the St. Louis City Sheriff.

                         Respectfully submitted,

                         **NAPOLI SHKOLNIK, PLLC**

                         By: */s/ Sean P. Barth*
                           Sean P. Barth, MO Bar #57015
                           Mark Twain Plaza II
                           103 West Vandalia Street, Suite 125
                           Edwardsville, IL 62025
                           SBarth@NapoliLaw.com
                           **ATTORNEY FOR PLAINTIFF**

1622-CC09982

Electronically Filed - City of St. Louis - August 11, 2016 - 02:37 PM

**IN THE CIRCUIT COURT
STATE OF MISSOURI
TWENTY-SECOND JUDICIAL CIRCUIT
(City of St. Louis)**

WANDA REDDICK; SUSAN HEWITT;
NEREIDA HERNANDEZ; JEANETTE
MONTIJO; PATRICIA GUERRERO;
PAMELA BOUTWELL; DORA COOK;
KAREN BOOTH; MAE HARKEY; KRISTEN
MORRISON; RUTH EGGERT; LAURA
CUTRIGHT; MARILYN DUVERGER; MARY
MCCLARY; DEE ORGAN; PHYLLIS
SMILEY; ROSA BACON; JUDY BAYNE;
KATHERINE ANDERSON; CYNTHIA
BURNETT; FRANCHESCA CARRASCO;
PATRICIA DICKERSON; KATHY THOMAS;
SUSAN ZYLA; WANDA PERRY; JANYCE
RODGERS; SUZANNE SMITH; JUDY
TYSON; SUSAN HEATH-COX; MATTIE
BROWN; LINDA FUCHS; KIMBERLY
KUEBLER; KRISTI COOPER; VICKI
WEYMOUTH; BARBARA BURKETT;
CLAUDIA MYERS; PEGGY
HIGGINBOTHAM; ROBERTA
HUTCHERSON; VICKI WILLIAMS;
ALVINA MOSLEY; ROSA THRELFALL;
NINA TRIMM; CYNTHIA RUELLE; LOIS
DESPRES; ALBERTA ROWE; MARGARET
WOLF; AGNES SANCHEZ; SONYA LENTZ;
ELIZABETH HUMES; CLAUDIA
CRUTCHER; DANA BAILEY; JOANN VEST;
CAROLYN TURNER; DONNA
CARPENTER; HEATHER HIATT;
BARBARA FARINA; LAUREN ROSE;
PATRICIA FAY ROBINETTE; ALICE
MADDEN; ELLEN BROWN; VONNA
BRANDSTATTER; KATHLEEN
AGUINAGE; KRISTA BRITTIN; GENA
SNOW; DEBRA RIEGERT

   Plaintiffs,

     v.

Case Number
Division

**JURY TRIAL DEMANDED**

Date Served: 8/19/16
Company Served: AT&T
Certified / CT Personal Reg. Mail FEDEX NP
Date Rec'd by Law Dept: 8/22/16
Entered Into TeamConnect: Yes No
Matter ID #: 2016021062